# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **STANLEY THOMAS** | * | **CIVIL ACTION NO.  11-1300**<br>**Section P** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **OUACHITA CORRECTIONAL**<br>**CENTER, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court are cross-motions for summary judgment filed by plaintiff Stanley Thomas [doc. # 29], and defendant, Nurse Donna Norman [doc. # 32].  The motions have been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For reasons stated below, it is recommended, *inter alia*, that plaintiff's motion for summary judgment [doc. # 29] be DENIED, and that defendant's motion for summary judgment [doc. # 32] be GRANTED.

## Procedural History

On July 5, 2011, Stanley Thomas, a prisoner at the Ouachita Correctional Center ("OCC"), filed the instant pro se civil rights complaint pursuant to 42 U.S.C. § 1983 against the OCC and Nurse Donna Norman (incorrectly named in the complaint as "Nurse Donna"). Thomas contends that during his ongoing confinement at the OCC, he did not receive constitutionally adequate medical care for his serious medical conditions consisting of painful, cracked wisdom teeth and skin boils.  In his original complaint, he sought a court order requiring defendants to remove his affected teeth, plus compensation for the cruel and unusual punishment

that he endured.

On August 12, 2011, the court determined that plaintiff sufficiently pleaded a cause of action, but ordered service solely on defendant, Nurse Norman.  (Aug. 12, 2011, Mem. Order [doc. # 9]).  On September 28, 2011, Norman filed her answer to plaintiff's complaint, as amended.  [doc. # 19].  Following a period for discovery, plaintiff filed the instant motion for summary judgment on January 4, 2012.  Defendant Norman filed her cross-motion for summary judgment on January 18, 2012.  Following delays for briefing, the matter is now before the court.

## Summary Judgment Principles

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id*.

 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v.*

2

*Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "The court *need* consider only the cited materials, but it *may* consider other materials in the record." Fed.R.Civ.P. 56(c)(3) (emphasis added). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[1] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

---

[1] I.e., beyond doubt.

3

## Analysis

**I.**     **Inadequate Medical Care**

a)     Law

According to the affidavit submitted by Donna Norman, plaintiff is a pretrial detainee.

(Affidavit of Donna Norman; Def. MSJ, Exh. A).  A pretrial detainee's constitutional right to

medical care (as enforced against a state actor) arises from the due process guarantee of the

Fourteenth Amendment.  *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000).  When a

pretrial detainee initiates a claim for the denial of medical care which is directed toward a

particular incident, it is properly analyzed as an episodic act case, and a deliberate indifference

standard is applied.  *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (en banc) (quoting *Hare v.*

*City of Corinth,* 74 F.3d 633, 644 (5th Cir.1996)); *Nerren v. Livingston Police Dept.,* 86 F. 3d 469

(5th Cir. 1996).  This is the same standard applied to claims brought by convicted prisoners under

the Eighth Amendment.   "[T]here is no significant distinction between pretrial detainees and

convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254

F.3d 545, 548 (5th Cir.2001).

To establish liability, a detainee must "show that a state official acted with deliberate

indifference to a substantial risk of serious medical harm and that injuries resulted." *Wagner v.*

*Bay City, Tex*., 227 F.3d 316, 324 (5th Cir. 2000); *see also Estelle v. Gamble*, 429 U.S. 97, 104,

97 S.Ct. 285 (1976).  Thus, the initial inquiry is two-pronged; the plaintiff must show 1)

objectively, that he was exposed to a substantial risk of serious harm; and 2) subjectively, that the

jail official was deliberately indifferent to the risk, i.e. that the official actually was aware of the

risk, but disregarded it.  *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Lawson v.*

4

*Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002).  In addition, deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that:  (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur.  *Thompson v. Upshur County, Tx.,* 245 F.3d 447, 458-59 (5th Cir. 2001).

"[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference."  *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  **Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."**  *Thompson*, 245 F.3d at 459 (emphasis added).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).  "[A] delay in medical care violates the Eighth Amendment only if it is due to deliberate indifference and results in substantial harm."  *Gregory v. McKennon*, 2011 WL 2473714 (5th Cir. June 22, 2011) (unpubl.) (citation and internal quotation marks omitted).

b)   <u>Evidence</u>

In support of her motion for summary judgment, Norman submitted her affidavit, together with various excerpts from plaintiff's OCC medical file.[2]  Defendant incorporated this evidence into her Statement of Uncontested Material Facts, which plaintiff did not controvert through his

---

[2]  Plaintiff's OCC medical file is filed herein, in its entirety, as document No. 21.

5

own statement of material facts supported by competent summary judgment evidence.

Accordingly, defendant's statement of material facts is deemed admitted.  *See* Fed.R.Civ.P.

56(e)(2) and LR 56.2 (material facts in the moving party's statement are deemed admitted unless

controverted by non-movant's statement).  The court's recitation of the medical chronology

tracks, in part, defendant's Statement of Uncontested Material Facts, as supplemented by the

court's own independent review of plaintiff's medical file, supported by citations to the record

evidence:

1.      Plaintiff was booked into the OCC on December 31, 2010, with preexisting dental problems.  (Med. File [doc. # 21-3, pg. 2]; Norman Affidavit).  He was examined by a physician on January 4, 2011.  (Med. File, doc. # 21-3, pg. 3).

2.      On January 8, 2011, plaintiff submitted a sick call request, wherein he formally complained about a broken wisdom tooth located on the top, left side of his mouth.  (Med. File [doc. # 21-4, pgs. 6-7]).  Plaintiff asked for an appointment at LSU-Shreveport so his broken tooth could be surgically removed.  *Id*.  Plaintiff was seen by medical staff on January 10, 2011.  *Id*.  On January 11, 2011, a medical doctor noted that plaintiff had no acute infection in his mouth.  *Id*.  Nonetheless, the physician prescribed Penicillin and ibuprofen.  *Id*.

3.      On January 11, 2011, Nurse Norman's secretary, Cheryl Phillips, scheduled plaintiff for an April 6, 2011, dental appointment to have his tooth extracted.  (Norman Affidavit; Med. File [doc. # 21-4, pg. 6]).  April 6, 2011, was the earliest date that LSU Shreveport could provide for plaintiff's appointment.  (Norman Affidavit).  Neither Norman, nor any other member of the medical staff at the OCC had any input as to when plaintiff could be seen by medical staff at LSU Shreveport.  *Id*.

4.      On January 24, 2011, plaintiff filed out a sick call request for tooth pain.  (Med. File [doc. # 21-4, pg. 3]).  He was seen by a physician on January 27, 2011.  *Id*.  The physician indicated that plaintiff was to follow-up with his dental appointment.  *Id*.

5.      On February 3, 2011, plaintiff filled out a sick call request because he had a rash and his skin seemed to be peeling off.  (Med. File [doc. # 21-4, pg. 2]).  Plaintiff was seen by a physician, who diagnosed jock itch, and prescribed Tolfanate cream, plus 500 mg. of a drug that is illegible.  *Id*.

6.    On March 10, 2011, plaintiff complained that his cream had run out.  (Med. File [doc. # 21-4, pg. 1]).  However, he did not show up for sick call.  *Id.*

7.    On March 13, 2011, plaintiff filled out another sick call request to complain that the cream and antibiotic were not helping his skin condition, because the rash had spread.  (Med. File [doc. # 21-3, pg. 27]).  A physician examined plaintiff, and again diagnosed jock itch, and prescribed Tolfanate cream, plus another drug that is illegible.  *Id.*

8.    On April 6, 2011, OCC employees transported plaintiff to LSU-Shreveport for his dental appointment.  Upon arrival, however, LSU-Shreveport personnel canceled his appointment and rescheduled it for November 7, 2011, – the earliest date provided.  (Norman Affidavit); *see also* Med File [doc. # 21-3, pg. 26].  LSU-Shreveport rescheduled plaintiff's appointment because it had mistakenly scheduled plaintiff on an appointment day reserved for civilians.  (Norman Affidavit).  Neither Norman, nor any member of the OCC medical staff had any input into the decision.  *Id.*

9.    On April 12, 2011, Plaintiff was informed that he had been placed on the July 8, 2011, dental list to see Dr. Hooten, a dentist who intermittently makes rounds at the OCC.  (Norman Affidavit).  Typically, there is a three month wait to see Dr. Hooten.  *Id.*  Because plaintiff's dental situation was not serious, however, July 8, 2011, was the earliest date that plaintiff could be seen by Dr. Hooten.  *Id.*

10.   On April 20, 2011, plaintiff completed a sick call request because his mouth hurt and because his infection around his private area had spread.  (Med. File [doc. # 21-3, pg. 26]).  A physician diagnosed him with Xerosis.  *Id.*[3]

11.   On May 4, 2011, plaintiff filled out a sick call request because he had a toothache, and because a boil was appearing on the lower part of his stomach.  (Med. File [doc. # 21-3, pg. 25]).  However, he failed to appear for the sick call.  *Id.*

12.   On May 7, 2011, plaintiff filed out a sick call request because his mouth was aching and because he had a staph infection or boil spreading on his arm, stomach, or leg.  (Med. File [doc. # 21-3, pg. 24].  He was seen by a physician on May 10, 2011, and prescribed Doxycycline and Bactrim.  *Id.*

13.   On May 20, 2011, plaintiff complained that an unnamed nurse, who accompanied

---

[3]  Xerosis is an "abnormal dryness of the skin or mucus membranes."  *U.S. National Library of Medicine*, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001838/  (last visited on Apr. 16, 2012).

Nurse Caraway, did not bring him his blood pressure medication. (Med. File [doc. # 21-3, pg. 23]). Plaintiff complained that this was not the first time that a "new" person had failed to bring his medication. *Id*. On May 26, 2011, a physician prescribed Clonidine for plaintiff. *Id*.

14. On June 13, 2011, plaintiff complained that the left side of his face had been aching because he had cavities on his top and bottom teeth. (Med. File [doc. # 21-3, pg. 11]). He also had a boil, that he previously thought had resolved, but had started to rise again. *Id*. The physician prescribed Bactrim, Doxycycline, and ibuprofen, with instructions to place plaintiff on the next dental list. *Id*.

15. On June 27, 2011, plaintiff complained that his wisdom tooth had been aching, his sinus was running, his nose was stopped-up, and that he constantly had to blow his nose. (Med. File [doc. # 21-3, pg. 20]). Nurse Norman noted that plaintiff was on Doxycycline, and ibuprofen for infection and pain. *Id*. The plan was to continue the medication. *Id*. A physician signed off on the assessment. *Id*.

16. On June 30, 2011, plaintiff complained that his mouth was aching and that his "cold sinus" was constantly dripping. (Med. File [doc. # 21-3, pgs. 17-18]). Plaintiff explained that another molar had broken. *Id*. He was prescribed medication and placed on the dentist list. *Id*.

17. On July 7, 2011, plaintiff completed a sick call request because he was experiencing a sharp pain under the left side of his ribs in the back, especially during urination. (Med. File [doc. # 21-3, pg. 10]). Plaintiff was examined on July 8, 2011, where it was noted that he was to be seen by a dentist that day. *Id*. Plaintiff also reported that his rib pain had dissipated. *Id*. Urinalysis was negative. *Id*. However, plaintiff was noted to be slightly dehydrated. *Id*. He was instructed to increase his fluids, and to follow-up for pain. *Id*.

18. On July 8, 2011, plaintiff was seen by Dr. Hooten. (Med. File [doc. # 21-3, pg. 14]). Although Dr. Hooten typically does not extract wisdom teeth, he was able to extract one of plaintiff's wisdom teeth because it was not impacted. (Norman Affidavit). Hooten prescribed Penicillin to thwart infection.

19. On July 15, 2011, plaintiff filled out a sick call request because his mouth ached at the site where his wisdom tooth had been removed, and because his other wisdom tooth hurt when he ate on the other side of mouth. (Med. File [doc. # 21-3, pg. 9]). The physician indicated that plaintiff should chew on his good side, and follow-up with the dentist. *Id*. Plaintiff asked for something for the pain until his next dental appointment, and received ibuprofen. *Id*., pg. 8.

20. On August 3, 2011, plaintiff complained that his mouth ached, that he had been

out of ibuprofen for three or four days, and that he might have an infection in his gums.  (Med. File [doc. # 21-3, pg. 6]).  The nurse prescribed antibiotics, and continued his ibuprofen regimen.  *Id*.

21.     On August 12, 2011, Dr. Hooten extracted two more of plaintiff's teeth.  (Med. File [doc. # 21-3, pg. 5]).  He also prescribed antibiotics.  *Id*.

22.     On August 18, 2011, plaintiff complained that one of the tooth extraction sites was painful and not healing.  (Med. File [doc. # 21-3, pg. 4]).  The nurse prescribed ibuprofen and to follow-up for pain.  *Id*.

Assuming for purposes of these motions only, that plaintiff's painful teeth and skin boils constituted substantial risks of serious harm,[4] the foregoing chronology of plaintiff's medical records  confirms that defendant was not deliberately indifferent to plaintiff's plight.  During an eight month span from January through August 2011, plaintiff was seen by OCC medical staff approximately 20 times for his various ailments, and eventually had his troublesome teeth removed.  The court understands plaintiff's evident frustration with the length of time that he had to wait before his wisdom teeth were removed.  However, plaintiff himself asked for an appointment at LSU-Shreveport to have his tooth surgically removed.  The uncontroverted evidence adduced by defendant is that the earliest appointment offered by LSU was on April 6, 2011.  This same evidence establishes that when plaintiff arrived at LSU on April 6 for his appointment, LSU- Shreveport personnel canceled his appointment and rescheduled it for November 7, 2011, – the earliest date provided.  (Norman Affidavit); *see also* Med File [doc. # 21-3, pg. 26].  The OCC then placed plaintiff in the queue for Dr. Hooten's next available visit date, which was July 8, 2011.  Fortunately, because the tooth was not impacted, Hooten was able to remove it.

_____

[4]  A proposition that is not universally shared.  *See* Def. MSJ, Memo., pg. 12 (collecting cases).

Plaintiff also complains about Nurse Norman's treatment of his skin ailment. Specifically, he seems to protest that his condition initially was diagnosed as jock itch, rather than a staph infection, and treated with cream, as opposed to antibiotics, thus, permitting the infection to spread.   However, plaintiff does not point to any competent summary judgment evidence to establish that he suffered from a staph infection.  Moreover, medical doctors signed off on the diagnoses for jock itch and xerosis, and concurred with the course of treatment. Merely because the doctors and nurses may have incorrectly diagnosed and treated plaintiff's skin affliction does not suffice to establish that they were deliberately indifferent to plaintiff's serious medical need.  "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."  *Gobert*, 463 F.3d at 346 (citations omitted).  Furthermore, continuous medical care ordinarily precludes a finding of deliberate indifference on the part of prison officials.  *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992).

In response to defendant's motion, and in support of his own motion, plaintiff has failed to adduce any competent summary judgment evidence to establish that Nurse Norman was personally responsible for the delays associated with his dental care or with the treatment of his skin condition.  The court emphasizes that "in the face of the defendant's properly supported motion for summary judgment, the plaintiff [can]not rest on his allegations . . . to get to [trial] without any significant probative evidence tending to support the complaint. " *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citations and internal quotation marks omitted).  Also, "a district

court has no obligation to provide a pro se litigant with particularized instructions on the requirements and consequences of summary judgment." *Stingley v. Den-Mar, Inc.*, 347 Fed. Appx. 14, 20 (5th Cir. Sept. 1, 2009) (unpubl.) (citation omitted).

Even if plaintiff were able to establish that Nurse Norman somehow contributed to the delays in his treatment, he has not adduced any evidence to establish that her actions or inaction materially exacerbated his condition or caused him harm. *See Gregory, supra* (no deliberate difference where pharmacy staff responded to inmate's medical needs in some way, and no proof of resulting harm from their actions); *Harris v. Walley*, 2011 WL 3501824 (5th Cir. Aug. 10, 2011) (unpubl.) (no deliberate indifference for one year delay in dental surgery where defendants made efforts to treat and monitor dental problems and no proof of permanent resulting injury); *Barrett v. Mississippi Dept. of Corrections*, 2011 WL 2183431 (5th Cir. June 3, 2011) (unpubl.) (inmate's argument that medical staff did not use the most efficacious method of treatment, e.g., performing surgery earlier, does not establish a claim of deliberate indifference) (citation omitted).

In the end, the fact that plaintiff does not believe that his medical treatment was as swift or comprehensive as it could have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not entitled to the "best medical care money can buy." *See Mayweather, supra*; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981).

## II.   Government Entity and Supervisory Liability

To the extent that plaintiff intended to sue Norman in her official capacity, the court observes that official-capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166, 105

11

S.Ct. 3099, 3105 (1985) (citing, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658,

690, n. 55, 98 S.Ct. 2018, 2035, n. 55 (1978)).  To impose § 1983 liability against a government

entity for the misconduct of one of its employees or officers, plaintiff must demonstrate that the

constitutional deprivation was caused by a policy or custom of the entity.  *Kohler v. Englade*,

470 F.3d 1104, 1115 (5th Cir. 2006) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S.

658, 690-691, 98 S.Ct. 2018, 2036 (1978)).  "In a Section 1983 case, the burden of proving the

existence of an unconstitutional municipal policy or established custom rests upon the plaintiff."

*McConney v. City of Houston*,  863 F.2d 1180, 1184 (5th Cir. 1989).

     In the case *sub judice*, plaintiff has not established an underlying constitutional violation

by Norman in her individual capacity.  *A fortiori*, he has not identified a precipitating

unconstitutional custom or policy enacted by the government entity.  *See Bustos v. Martini Club*

*Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (because the officers did not violate plaintiff's

constitutional rights, neither did the city).

     Insofar as plaintiff seeks to hold Norman liable in her supervisory capacity, the court

observes that supervisors can be held liable when the "enforcement of a policy or practice results

in a deprivation of federally protected rights."  *Bustos, supra* (citation omitted).  Again, however,

because plaintiff has failed to allege or establish a constitutional violation by the individual

directly involved in the challenged activity, he cannot show that any supervisor implemented a

policy or custom that violated his constitutional rights.  *Bustos*, 599 F.3d at 468.

**III.**    **Plaintiff's Motion for Summary Judgment**

     In his motion for summary judgment, plaintiff contends that for up to an eight month

period, Nurse Norman continued to prescribe ibuprofen to treat plaintiff's pain, despite her

knowledge that prolonged ibuprofen use could harm plaintiff's gastrointestinal tract.  Plaintiff

contends that he has been having problems with his stomach, and that on December 1, 2011, he

went to sick-call.  On February 14, 2012, plaintiff apparently underwent a colonoscopy at E.A.

Conway Hospital.

By separate motion, plaintiff seeks an order compelling defendant to produce his medical

records related to the colonoscopy.  However, the fact that the OCC took plaintiff to the hospital

to undergo a colonoscopy indicates that the facility is addressing plaintiff's latest medical

condition.  Moreover, the alleged deleterious effects of plaintiff's prolonged ibuprofen use is one

of the matters raised by plaintiff in his new civil action filed against the OCC.  *See Thomas v.*

*Ouachita Correctional Center, et al.*, Civil Action No. 12-0687 (W.D. La.).

Defendant objects to plaintiff's attempt to assert an additional claim at the summary

judgment stage of these proceedings.  Defendant further argues that this new claim is not a part

of this litigation.  (Def. Opp. Memo., pg. 2).  The court agrees.  It would prove unduly prejudicial

to defendant to permit plaintiff to amend his complaint to add an additional claim at this stage of

the proceedings.  Moreover, any prejudice to plaintiff is ameliorated by the fact that this claim is

included in his latest suit against OCC officials.

## IV.    The OCC is not a Proper Party Defendant

This court previously declined to order service upon defendant, OCC, because the OCC is

not an entity capable of being sued.  *See* Aug. 12, 2011, Mem. Order.[5]  Indeed, under Federal

Rule of Civil Procedure 17(b), "capacity to sue or be sued shall be determined by the law of the

---

[5] A court's decision to withhold service for a defendant after screening the case under 28 U.S.C. § 1915A, is an implicit determination that plaintiff has no cognizable claims against that defendant).  *Sama v. Hannigan*, 669 F.3d 585, 589 (5th Cir. 2012).

state in which the district court is held," i.e., Louisiana.  To enjoy the capacity to be sued under

Louisiana law, an entity must qualify as a "juridical person."  *Dejoie v. Medley*, 945 So.2d 968,

972 (La. App. 2d Cir. 2006) (citations omitted).  This term is defined by the Louisiana Civil

Code as ". . . an entity to which the law attributes personality, such as a corporation or

partnership." La. Civ. Code Art. 24.  However, there is no evidence that the OCC is so

structured.  Rather, by all indications, the OCC is a parish corrections facility operated by the

Ouachita Parish Sheriff.  In fact, the sheriff is charged with operating the parish jail and ensuring

that the inmates receive proper care. *Oladipupo v. Austin*, 104 F. Supp.2d 626, 641 (W.D. La.

2000) (citing La. R.S. § 15:704); *Langley v. City of Monroe*, 582 So.2d 367, 368 (La. App. 2d

Cir. 1991) (citations omitted).  Accordingly, defendant, OCC, cannot be sued and must be

dismissed from the case.[6]

## V.    State Law Claims

To the extent that plaintiff's complaint, as amended, sets forth additional claims arising

under state law (e.g., a tort claim for negligence or medical malpractice), when, as recommended

here, all constitutional claims which conferred federal subject matter jurisdiction are dismissed,

the court may decline to exercise supplemental jurisdiction over the remaining state law claims.

---

[6] The court possesses the inherent authority to dismiss the OCC sua sponte.  *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also, Spann v. Woods*, 66 F.3d 322, 1995 WL 534901 (5th Cir. 1995) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer); *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).

28 U.S.C. § 1367.[7]  In fact, this is the general rule.  *Priester v. Lowndes County*,  354 F.3d 414,

425 (5th Cir. 2004) (citation omitted).  The twin interests of comity and efficiency dictate that any

remaining state law claims be dismissed without prejudice.  28 U.S.C. § 1367(c).[8]

### Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 29] filed by

plaintiff Stanley Thomas be DENIED.

**IT IS FURTHER RECOMMENDED** that plaintiff's claims against the Ouachita

Correctional Center be DISMISSED.

**IT IS FURTHER RECOMMENDED** that the motion for summary judgment [doc. #

32] filed by defendant Nurse Donna Norman be GRANTED, and that judgment be entered in

favor of said defendant, dismissing with prejudice plaintiff's claims arising under the

Constitution and laws of the United States.  Fed. R. Civ. P. 56.

**IT IS FURTHER RECOMMENDED** that any remaining state law claims be

DISMISSED, without prejudice.  28 U.S.C. § 1367(c).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

**fourteen (14) days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court.  A party may respond to another party's objections within

**fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or

---

[7]     In the case *sub judice*, there is no indication that the court may exercise diversity
jurisdiction, 28 U.S.C. § 1332.

[8]  The limitations period is tolled for a minimum of 30 days after dismissal.  *See* 28
U.S.C. § 1367(d).

response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 19th day of April 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE